UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-----------------------------------------------------------------------X

SUSANA GUIZAN, as administrator of the          :
ESTATE OF GONZALO GUIZAN,                        :
                                    Plaintiff,   :

        V.                                       :          Civil No. 3:09cv1436(JBA)

TOWN OF EASTON; JOHN F. SOLOMON,                 :
Individually and as Chief of the Easton Police  :
Department; JAMES CANDEE, Individually           :
and as a Captain of the Easton Police Department; :
CHRISTOPHER BARTON, Individually and             :
as an Officer of the Easton Police Department;   :
TOWN OF TRUMBULL; THOMAS KIELY,                  :
Individually and as Chief of the Trumbull Police :
Department; RONALD KIRBY, Individually           :
and as a Lieutenant of the Trumbull Police       :
Department; KENNETH JONES, Individually          :
and as a Sergeant of the Trumbull Police         :
Department; WILLIAM RUSCOE, Individually         :
and as an Officer of the Trumbull Police         :
Department; BRIAN WEIR, Individually and         :
as an Officer of the Trumbull Police Department; :
TODD EDWARDS, Individually and as an             :
Officer of the Trumbull Police Department;       :
GREGG LEE, Individually and as an Officer        :
of the Trumbull Police Department; TOWN OF       :
MONROE; JOHN SALVATORE, Individually             :
and as Chief of the Monroe Police Department;    :
JAY TORRESSO, Individually and as a Sergeant     :
of the Monroe Police Department; MICHAEL         :
SWEENEY; Individually and as an Officer of       :
the Monroe Police Department; TOWN OF            :
DARIEN; DUANE LOVELLO, Individually              :
and as Chief of the Darien Police Department;    :
MARK CIRILLO, Individually and as a Sergeant     :
of the Darien Police Department; TOWN OF         :

1

WILTON; EDWARD KULHAWIK, Individually          :
and as Chief of the Wilton Police Department;  :
STEPHEN BRENNAN, Individually and as           :
a Sergeant of the Wilton Police Department;    :
and GREGG PHILLIPSON, Individually and         :
as an Officer of the Wilton Police Department, :

                                 Defendants.  :
----------------------------------------------------------------------X

----------------------------------------------------------------------X

RONALD TEREBESI,                               :
                                               :
                        Consolidated Plaintiff,:
        V.                                     :

TOWN OF EASTON; JOHN F. SOLOMON,               :
Individually and as Chief of the Easton Police :
Department; JAMES CANDEE, Individually         :
and as a Captain of the Easton Police Department; :
CHRISTOPHER BARTON, Individually and           :
as an Officer of the Easton Police Department; :
TOWN OF TRUMBULL; THOMAS KIELY,                :
Individually and as Chief of the Trumbull Police :
Department; RONALD KIRBY, Individually         :
and as a Lieutenant of the Trumbull Police     :
Department; KENNETH JONES, Individually        :
and as a Sergeant of the Trumbull Police       :
Department; WILLIAM RUSCOE, Individually       :
and as an Officer of the Trumbull Police       :
Department; BRIAN WEIR, Individually and       :
as an Officer of the Trumbull Police Department; :
TODD EDWARDS, Individually and as an           :
Officer of the Trumbull Police Department;     :
GREGG LEE, Individually and as an Officer      :
of the Trumbull Police Department; TOWN OF     :
MONROE; JOHN SALVATORE, Individually           :
and as Chief of the Monroe Police Department;  :
JAY TORRESSO, Individually and as a Sergeant   :
of the Monroe Police Department; MICHAEL       :

SWEENEY; Individually and as an Officer of      :
the Monroe Police Department; TOWN OF      :
DARIEN; DUANE LOVELLO, Individually      :
and as Chief of the Darien Police Department;   :
MARK CIRILLO, Individually and as a Sergeant :
of the Darien Police Department; TOWN OF    :
WILTON; EDWARD KULHAWIK, Individually    :
and as Chief of the Wilton Police Department;   :
STEPHEN BRENNAN, Individually and as     :
a Sergeant of the Wilton Police Department;    :
and GREGG PHILLIPSON, Individually and    :
as an Officer of the Wilton Police Department,  :

                                      Defendants. :
-----------------------------------------------------------------------X

## PLAINTIFF TEREBESI'S SECOND AMENDED COMPLAINT

     The plaintiff, RONALD TEREBESI, by and through his attorneys, complains and alleges as follows:

## I.      INTRODUCTION

     1.     This is an action to redress the deprivation by the defendants of rights secured to the plaintiff under the Fourth and Fourteenth Amendments of the United States Constitution, as well as under principles of the statutory and common law of the State of Connecticut.

     2.     The injuries alleged herein to have been suffered by the plaintiff were all the direct and proximate result of certain outrageous and highly unprofessional police conduct engaged in by the defendants, jointly and severally, during the course of investigating a minor criminal offense, and, in connection with said investigation,

executing a search warrant at the plaintiff's residence in Easton, Connecticut on May 18, 2008.

## II.   JURISDICTION AND VENUE

3.      The jurisdiction of this Court is invoked under the provisions of 28 U.S.C. §§1331, 1343 (a)(3) and 1367(a), as well as 42 U.S.C. §1983.

4.      Venue lies in this District under 28 U.S.C. §1391.

## III.   THE PARTIES

5.      The plaintiff, RONALD TEREBESI, is a citizen of the United States and a resident of the town of Easton, Connecticut.

6.      The defendants, TOWN OF EASTON, TOWN OF TRUMBULL, TOWN OF MONROE, TOWN OF DARIEN and TOWN OF WILTON, (hereinafter, "the municipal defendants"), are municipal corporations organized and existing under the laws of the State of Connecticut.  As such, the municipal defendants act under color of state law.

7.      The defendants, JOHN F. SOLOMON, JAMES CANDEE and CHRISTOPHER BARTON, are members of the Easton Police Department.  At all times hereinafter mentioned, defendant Solomon occupied the rank of police chief, defendant Candee was a captain, and defendant Barton was an officer.  As such, defendants Solomon, Candee and Barton act under color of state law.

8.      The defendants, THOMAS KIELY, RONALD KIRBY, KENNETH JONES, WILLIAM RUSCOE, BRIAN WEIR, TODD EDWARDS and GREGG LEE, are members of the Trumbull Police Department.  At all times hereinafter mentioned, defendant Kiely

4

occupied that rank of police chief, defendant Kirby was a lieutenant, defendant Jones was a sergeant, and defendants Ruscoe, Weir, Edwards and Lee were officers.  As such, defendants Kiely, Kirby, Jones, Ruscoe, Weir, Edwards and Lee act under color of state law.

9.      The defendants, JOHN SALVATORE, JAY TORRESSO and MICHAEL SWEENEY are members of the Monroe Police Department.  At all times hereinafter mentioned, defendant Salvatore occupied the rank of police chief, defendant Torresso was a sergeant, and defendant Sweeney was an officer.  As such, defendants Salvatore, Torresso and Sweeney act under color of state law.

10.      The defendants, DUANE LOVELLO and MARK CIRILLO, are members of the Darien Police Department.  At all times hereinafter mentioned, defendant Lovello occupied the rank of police chief and defendant Cirillo was a sergeant.  As such, defendants Lovello and Cirillo act under color of state law.

11.      The defendants, EDWARD KULHAWIK, STEPHEN BRENNAN and GREGG PHILLIPSON, are members of the Wilton Police Department.  At all times hereinafter mentioned, defendant Kulhawik occupied the rank of police chief, defendant Brennan was a sergeant and defendant Phillipson was an officer.  As such, defendants Kulhawik, Brennan and Phillipson act under color of state law.

## IV.      BACKGROUND

12.      The SOUTHWEST REGIONAL EMERGENCY RESPONSE TEAM, (hereinafter, "SWRERT"), is a specialized, tactical, "SWAT-type" unit which was formed

by a group of Connecticut municipalities through a mutual aid compact, pursuant to Conn. Gen. Stats. § 7-277a, and which included as participants, <u>inter</u> <u>alia</u>, the municipal defendants named herein.  SWRERT's governing body is known as the BOARD OF POLICE CHIEFS, (hereinafter, the "BPC"), which is comprised of, <u>inter</u> <u>alia</u>, the chiefs of the police departments of the municipal defendants named herein.

13.     At all times hereinafter mentioned, in addition to being members of their respective police departments, defendants KIRBY, JONES, RUSCOE, WEIR, EDWARDS, LEE, TORRESSO, SWEENEY, CIRILLO, BRENNAN and PHILLIPSON were also members of SWRERT and acted under the direct control and supervision of the BPC.

## V.     FACTS

14.     On or about May 18, 2008, at approximately 2:00 in the afternoon, plaintiff Terebesi and a house guest, Gonzalo Guizan, were seated in the family room of Terebesi's residence, located at 91 Dogwood Drive, Easton, Connecticut, watching television.

15.     Suddenly, and without warning, members of SWRERT, which included, <u>inter</u> <u>alia</u>, defendants Kirby, Jones, Ruscoe, Weir, Edwards, Lee, Torresso, Sweeney, Cirillo, Brennan and Phillipson, acting in conjunction with, and at the behest and instigation of, members of the Easton Police Department, including defendants Solomon, Candee and Barton, initiated the execution of an elaborately planned police "raid" of Terebesi's residence all for the purpose of executing a court-issued search

6

warrant which authorized the police to enter the premises of 91 Dogwood Drive in order to search for "2 small clear glass smoking pipes and crack cocaine in a tin box."

16.     During the course of executing the foregoing planned police raid, defendant Sweeney shot and killed Gonzalo Guizan, and plaintiff Terebesi suffered extreme and serious physical and emotional injuries and trauma, as well as extensive damage to his real and personal property.

## COUNT ONE

### (42 U.S.C. § 1983--As against all defendants, jointly and severally)

17.     Paragraphs 1 through 16 are repeated and realleged as if fully set forth herein.

18.     By reason of the foregoing acts, circumstances and events, the defendants, acting in concert and under color of state law, engaged in a course of extreme and outrageous conduct, which involved the use of unreasonable, excessive and deadly force, in the execution of a search warrant, and in the course of affecting seizures of the plaintiff, and others, in violation of rights secured to plaintiff Terebesi under the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.  Said course of conduct included, inter alia, the following specific acts:

(a)     As noted above, the search warrant issued by the court authorized police to search Terebesi's residence for two small glass smoking pipes and a tin box believed to contain crack cocaine, and neither Terebesi nor his house guest, Gonzalo Guizan, were known or could reasonably be believed by the police to be dangerous

individuals.  Yet, the defendants undertook the raid of Terebesi's home wearing body

armor, helmets and knee pads, and armed with a total of twenty-one handguns, one

assault rifle, one machine gun, three sniper rifles, one thousand four hundred ninety-

four rounds of ammunition, eighteen DefTech 25 explosive devices, a knife, two

battering rams, and various tools;

       (b)    As also noted above, at the time the police raid of Terebesi's home

was initiated, Terebesi and Guizan were seated on a couch in Terebesi's family room

watching television.  Upon signal, and according to an operational plan formulated by

defendants Solomon, Kirby, Cirillo, Jones and Ruscoe, which did not provide for

Terebesi and his house guest to receive any meaningful announcement of police

presence, or any meaningful opportunity whatsoever to voluntarily permit the police to

enter the home to search, defendants Phillipson and Torresso shattered the dining room

windows of Terebesi's residence  with a gaff and a halligan tool, defendant Brennan

threw a DefTech 25 explosive device into the home and, six seconds later, defendant

Torresso threw a second DefTech 25 explosive device into the home.  The detonation

of these devices was designed and intended to render and, in fact, did render, Terebesi

and Guizan deaf, disoriented, stunned and blinded;

       (c) Seconds after the first two explosive devices were detonated,

defendant Lee threw a third DefTech 25 explosive device into the family room area of

the home in the immediate vicinity where Terebesi and Guizan were located.  At the

same time, and without waiting for that third device to actually explode, defendant

Sweeney, carrying a ballistic shield, clad in full ballistic body armor and Kevlar helmut, and carrying a Glock semiautomatic pistol in his hand, entered the family room where Terebesi and Guizan were located with defendant Weir following closely behind him. When the third explosive device thrown by defendant Lee detonated in the family room, defendant Sweeney, without any justification whatsoever, immediately began firing his handgun in the direction of Guizan and Terebesi striking Guizan in the chest, abdomen, left thigh, right hand, right arm, right leg, and face, mortally wounding and killing Guizan, and causing Terebesi to suffer extreme fear and mental distress for his own life and personal safety;

(d)     Immediately after defendant Sweeney began discharging his weapon, defendant Weir, who was still located in the area immediately behind Sweeney, also discharged his M-4 assault rifle.  Weir's sympathetic discharge served to escalate the situation by signaling to Sweeney that deadly force was properly being employed by Sweeney, thus causing Sweeney to fire further;

(e)     Immediately after shooting and killing Guizan, the police, without a warrant of any kind authorizing Terebesi's arrest or seizure in his own home, and in complete absence of any resistance whatsoever by the plaintiff, utilized extreme and unreasonable force against Terebesi while placing him under arrest and taking him into police custody, causing him to suffer physical injuries and aggravating a serious, pre-existing neck injury.  Thereafter, the police continued through Terebesi's residence

deploying at least eight more DefTech explosive devices and starting a fire in Terebesi's basement;

19.    The severity of the criminal conduct under investigation by the police through the execution of the search warrant, i.e., a minor narcotics violation, did not begin to justify the extreme and unreasonable methods employed by the police in formulating and carrying out their operational plan for the search of the plaintiff's residence or the subsequent seizure of plaintiff.  While SWRERT, by definition, is an "emergency response team," there was absolutely no "emergency" requiring the enlistment or deployment of SWRERT's services in executing the search warrant in this instance.  Furthermore, as the police knew full well, neither Terebesi nor his house guest posed any threat of any kind whatsoever to the safety of the officers or others and, at the time the police entered Terebesi's residence, neither he nor his house guest did anything which could even remotely be considered to constitute active resistance to the police entry of the residence, an attempt to destroy or conceal evidence, or evasion of arrest by flight.

19(a). Furthermore: (i) SWRERT's operational plan was developed without a negotiation strategy and SWRERT made no effort to negotiate before executing a tactical option; (ii) the operational plan called for the officers executing the warrant to break the rear windows of the home without first meaningfully announcing the presence of officers with a search warrant; (iii) the operational plan called for the officers executing the warrant to deploy two Def-Tech 25 explosive devices into the home

before meaningfully announcing the presence of officers with a warrant; (iv) the operational plan called for the officers executing the warrant to provide notice of the warrant only after the deployment of explosive devices; (v) the operational plan was deliberately designed so as not to allow the occupants of the residence time or opportunity to voluntarily open the entry door or comply with a police request for cooperation by the occupants; (vi) the operational plan called for SWRERT officers to utilize a battering ram to break and enter the doorway of the residence without meaningfully announcing their presence in a manner that would allow the occupants to voluntarily open the door; (vii) the operational plan called for SWRERT officers to deploy a Def-Tech 25 explosive device into an occupied room; (viii) the operational plan called for SWRERT officers to enter the room before the third Def-Tech 25 explosive device detonated; (ix) despite the known fact that Terebesi had been the recent victim of an aggravated assault at 91 Dogwood Drive, wherein windows of his residence were broken and a shotgun had been discharged, the operational plan called for "dynamic entry" in a manner likely to instill in plaintiff the belief that his residence was under another unlawful shotgun attack; (x) despite the known fact that two uniformed Easton police officers had executed an arrest warrant for Terebesi within the last thirty-six days by simply knocking on the door, the operational plan called for a forced entry that involved twenty-one heavily armed officers, breaking windows, deploying explosives in the house, and battering open the door and entering the house; (xi) despite the known fact that the items authorized to be seized under the warrant were two small clear glass

11

smoking pipes and crack cocaine in a tin box, the operational plan called for a forced, assaultive police entry to the home; (xii) the supervisory officers responsible for formulating the operational plan failed to adequately brief the SWRERT officers executing the warrant on the operational plan, failed to adequately rehearse the plan, failed to disclose to SWRERT officers, or even consider, express objections by other members of SWRERT to the police "raid" as planned; and failed to consider or adequately disclose to the SWRERT officers executing the search warrant the history of cooperative, compliant, non-violent, non-confrontational and otherwise passive interactions between and among Terebesi, Guizan and law enforcement.

20.     As a direct and proximate result of the foregoing acts of excessive and abusive force, as well as those acts which wrongfully aided, abetted, encouraged or resulted in such excessive and abusive force as described above, plaintiff Terebesi suffered:

(a)     Severe and extreme mental and emotional distress and trauma arising from the devastating fear he was caused to suffer as he watched the police storm his residence, detonate explosive devices designed to incapacitate him, shoot and kill his friend, and otherwise engage in conduct which led him reasonably to believe that he was about to die;

(b)     The aggravation of pre-existing disk herniations in his neck which, prior to May 18, 2008, had already resulted in the need for two separate disk fusion surgeries; and

12

      (c)     Severe damage to his residence and items of personal property.

## COUNT TWO

### (42 U.S.C. § 1983--As against defendants Solomon, Candee and Barton, jointly and severally)

21.    Paragraphs 1 through 19(a) are repeated and realleged as if fully set forth herein.

22.    The decisions: (a) to enlist and deploy the services of SWRERT, a police "emergency response team," in order to execute a search warrant in a situation where no "emergency" existed and no "emergency response" called for; (b) to storm and assault the home of plaintiff Terebesi in such a highly intrusive, abusive and invasive manner in order to execute a search warrant which called for the mere seizure by police of two small crack pipes and a small tin box containing a quantity of crack cocaine; (c) to formulate and employ an operational plan for the execution of said search warrant which was designed specifically not to accord plaintiff Terebesi any meaningful opportunity whatsoever to cooperate with the execution of said search warrant; and (d) to utilize extreme, unreasonable, excessive and wholly unnecessary force in executing the search of Terebesi's residence and in affecting his arrest; considered collectively, constituted a series of bad faith acts on the part of defendants Solomon, Candee and Barton which were expressly and maliciously designed, intended and undertaken by these defendants not for the proper purpose of fairly and evenhandedly investigating what was, at best, a minor criminal violation, but rather to frighten, harass and intimidate

plaintiff Terebesi, to punish him for having engaged in such criminal conduct in an

upscale, Easton, Connecticut neighborhood, to impress and placate certain residents of

Terebesi's upscale, Easton, Connecticut neighborhood, and to chill, discourage or

extinguish any future desire on Terebesi's part to remain a resident of the town of

Easton.

23.    The foregoing shocking and outrageous conduct of defendants Solomon,

Candee and Barton was wanton and willful, motivated by malice, and undertaken by

these defendants in total disregard and indifference to the rights of plaintiff under the

Fourth and Fourteenth Amendments of the United States Constitution not to be

subjected to unreasonable searches and seizures.

24.    As a direct and proximate result of the foregoing outrageous, abusive,

malicious and wholly unjustified acts of police misconduct perpetrated against plaintiff

Terebesi at the behest and under the direction and instigation of defendants Solomon,

Candee and Barton for the improper, ulterior motives described above, plaintiff Terebesi

suffered:

(a)    Severe and extreme mental and emotional distress and trauma

arising from the devastating fear he was caused to suffer as the police stormed and

assaulted his residence, detonated explosive devices designed to incapacitate him, shot

and killed his friend, and otherwise engaged in conduct which led him to reasonably

believe that he was about to die;

(b)     The aggravation of pre-existing disk herniations in his neck which, prior to May 18, 2008, had already resulted in the need for two separate disk fusion surgeries; and

(c)     Severe damage to his residence and items of personal property.

## COUNT THREE

**(42 U.S.C. § 1983--As against defendants Easton, Trumbull, Monroe, Darien, Wilton, Solomon, Kiely, Salvatore, Lovello and Kulhawik, jointly and severally)**

25.     Paragraphs 1 through 19(a) of Count One are repeated and realleged as if fully set forth herein.

26.     The SWRERT police raid described above occurred with the authorization, and under the direct supervision, of members of the BPC, which included, inter alia, defendants Solomon, Kiely, Salvatore, Lovello and Kulhawik, but without the foregoing defendants having properly ensured, at any time prior to said raid, that the SWRERT officers who were involved in conducting the raid had received adequate training and supervision in proper police practices and procedures, including (i) the "knock and announce" requirements of the Fourth Amendment and Connecticut law; (ii) entry tactics; (iii) the use of distraction devices such as DefTech 25 explosive devices; (iv) firearms training; and (v) the use of deadly force.  On information and belief, the SWRERT officers in this case also acted in the total absence of any written policies and procedures governing the deployment of SWRERT in the execution of search warrants, and use of diversionary explosive devices.

27.    As a direct and proximate result of the defendants' failure to ensure the proper training and supervision described above, plaintiff Terebesi suffered:

(a)    Severe and extreme mental and emotional distress arising from the devastating fear he was caused to suffer as he watched the police storm his residence, detonated explosive devices designed to incapacitate him, shoot and kill his friend, and otherwise engage in conduct which led him to believe that he was about to die;

(b)    The aggravation of pre-existing disk herniations in his neck which, prior to May 18, 2008, had already resulted in the need for two separate disk fusion surgeries; and

(c)    Severe damage to his residence and items of personal property.

## COUNT FOUR

### (Negligence; as against all defendants, jointly and severally)

28.    Paragraphs 1 through 16 are repeated and realleged as if fully set forth herein.

29.    The physical, psychic and emotional injuries suffered by plaintiff Terebesi as more fully described hereinafter were the direct and proximate result of the carelessness and negligence of the defendants, in that the defendants:

(a)    employed a degree of force in executing a search warrant which the defendants knew or should have known was not reasonably necessary;

(b)    failed to evaluate the need for, and attendant risks of, the use of deadly force in executing a search warrant, and to balance the degree of force to be applied with the need for such force;

(c)  enlisted SWRERT to assist in conducting the search of the plaintiff's residence as an assaultive police "raid" when, in fact, an "emergency response" was wholly unnecessary and SWRERT's "over-kill" methods wholly unjustified;

(d)  employed overwhelming deadly force in a situation where simply waiting presented no risks of harm to anyone and no risk of loss of evidence;

(e)  stormed the plaintiff's residence by force when such conduct was clearly unjustified, unreasonable and excessive;

(f)  failed to report and consider as a factor in deciding the extent of force necessary to affect their search of plaintiff Terebesi's residence, prior passive, non-violent interactions between the police and plaintiff Terebesi, clearly indicating that Terebesi, an individual with no criminal history whatsoever, was not a dangerous or violent person;

(g)  failed to consider the use of any less intrusive means to execute the warrant before opting to use deadly force;

(h)  failed to employ perimeter control and show of force;

(i)  failed to employ gas or other less lethal force;

(j)  failed to employ a ruse entry;

(k)  failed to contact plaintiff Terebesi by telephone, prior to initiating their raid, and demand that he voluntarily submit to a police search of the residence pursuant to the search warrant;

(l)  failed to send uniformed officers to knock on the door of the residence, announce a police presence, and request Terebesi's voluntary submission to police entry and search of his residence pursuant to the warrant;

(m)  designed a forced entry plan the execution of which would practically replicate the experience of an earlier aggravated assault which had been criminally perpetrated against Terebesi at his

residence by an unknown assailant or assailants, of which the police were fully aware, and which police knew full well would remind Terebesi of that prior, assaultive incident and cause him to suffer extreme fear and distress;

(n)    failed to meaningfully knock and announce the presence of police with a warrant before breaking windows and deploying DefTech 25 explosive devices into the home;

(o)    deployed DefTech 25 explosive devices in a manner which drove Terebesi and Guizan directly in the direction of the entry team as it breached the door, and thereby exposed Terebesi and Guizan unnecessarily to risks attendant in the use of deadly force;

(p)    deployed DefTech 25 explosive devices in a manner which police knew full well would deafen, blind, and disorient the occupants of the house, hinder them from knowing and understanding what was occurring, and prevent them from being able to voluntarily comply with the dictates of the search warrant;

(q)    unreasonably used a battering ram to break and enter the residence;

(r)    entered the residence before the third DefTech 25 explosive device detonated, thereby causing themselves to be deafened, blinded, disoriented and hindered in their ability to be fully aware of what was occurring around them during the course of entry;

(s)    deployed a DefTech 25 explosive device in a manner likely to make the entry team believe they were being fired upon;

(t)    fired guns at the plaintiff and Guizan, who were unarmed and did not present a threat of any kind to any officer or the public;

(u)    failed to train and supervise members of SWRERT on proper police practices and procedures, including the knock and announce requirement of search warrant execution, entry procedures, use of distraction devices, firearms training, and use of deadly force;

(v)    failed to promulgate, and to have in place, policies and/or procedures governing the deployment of SWRERT's services;

(w)    failed to train and supervise officers concerning the timing of entry of the officers when distraction devices are deployed, including the requirement that officers should wait until a device detonates before entering the premises to be searched;

(x)    failed to comply with specific policies, procedures, directives, standards, and rules related to the "knock and announce" requirement of search warrant execution, the use of explosive distraction devices and the use of deadly force.

(y)    utilized deadly force in the seizures of plaintiff and his house guest, in violation of Conn. Gen. Stats. § 53a-22.

30.    As a direct and proximate result of the foregoing negligent acts of police misconduct described above, plaintiff Terebesi suffered:

(a)    Severe and extreme mental and emotional distress and trauma arising from the devastating fear he was caused to suffer as he watched the police storm his residence, detonate explosive devices designed to incapacitate him, shoot and kill his friend, and generally engage in a course of outrageous conduct which led him reasonably to believe that he was about to die;

(b)    The aggravation of pre-existing disk herniations in his neck which, prior to May 18, 2008, had required Terebesi to undergo two separate disk fusion surgeries; and

(c)    Severe damage to his residence and items of personal property.

## COUNT FIVE

**(Municipal Liability--As against each of the municipal defendants, individually)**

31.     Paragraphs 1 through 30 are repeated and realleged as if fully set forth herein.

32.     Pursuant to Conn. Gen. Stats. §§ 52-557n (a)(1)(A) and 7-465, each of the municipal defendants is liable for the acts of its respective police employees, constituting negligence and violations of plaintiff's civil rights, as alleged herein, which caused the injuries and losses alleged herein to have been suffered by plaintiff Terebesi.

33.     Pursuant to Conn. Gen. Stats. § 7-465, the plaintiff provided notice of his claims to each of the municipal defendants on November 14, 2008.  Copies of said notices are annexed hereto as Exhibits A through E.

WHEREFORE, plaintiff claims judgment against the defendants as follows:

**As to Count One:**

**As to all defendants, jointly and severally:**

1.     Compensatory damages;

2.     Punitive damages;

3.     Costs and reasonable attorneys' fees in accordance with 42 U.S.C. § 1988; and

4.     Such other relief as the Court may deem appropriate.

**As to Count Two:**

**As to defendants Solomon, Candee and Barton, jointly and severally:**

1.     Compensatory damages;

2.     Punitive damages in amount not yet fully ascertained, but not less than $5 million;

3.     Costs and reasonable attorney's fees in accordance with 42 U.S.C. § 1988; and

4.     Such other relief as the Court may deem appropriate.

**As to Count Three:**

**As to defendants Easton, Trumbull, Monroe, Darien, Wilton, Solomon, Kiely, Salvatore, Lovello, Kulhawik, jointly and severally:**

1.     Compensatory damages;

2.     Costs and reasonable attorney's fees in accordance with 42 U.S.C. § 1988; and

3.     Such other relief as the Court may deem appropriate.

**As to Count Four:**

**As to all defendants, jointly and severally:**

1.     Compensatory damages;

2.     Costs; and

3.     Such other relief as the Court may deem appropriate.

**As to Count Five:**

**As to each municipal defendant:**

1.     Compensatory damages in accordance with Conn. Gen. Stats §§ 52-555 and 7-465;

2.      Costs and reasonable attorney's fees in accordance with 42 U.S.C. §

1988; and

3.      Such other relief as the Court may deem appropriate.

Dated: Bridgeport, Connecticut
       November 1, 2011

THE PLAINTIFF,
RONALD TEREBESI

By: _____

Gary A. Mastronardi
211 State Street
Bridgeport, Connecticut 06604
Tel: (203) 368-0411
Fax: (203) 368-6875
gamlaw@snet.net
Juris No.: 307046

His Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2011, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

_____

Gary A. Mastronardi